# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2019

Lyle W. Cayce
Clerk

No. 17-60744

———

MARIA SYLVIA CARDOSO DE FLORES, also known as Maria Flores,

    Petitioner

v.

MATTHEW G. WHITAKER, ACTING U. S. ATTORNEY GENERAL,

    Respondent

———

Petition for Review of an Order of
the Board of Immigration Appeals

———

Before KING, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:

An immigration judge ordered petitioner Maria Sylvia Cardoso de Flores removed from the United States. Cardoso de Flores had been lawfully admitted as a permanent resident alien, but the immigration judge determined she was removable under the Immigration and Nationality Act because she was convicted of a drug offense. The Board of Immigration Appeals affirmed. Cardoso de Flores petitions this court for review, arguing that she is not removable because she was convicted for possessing a small amount of marijuana for personal use. We find no error in the BIA's analysis; accordingly, we DENY Cardoso de Flores's petition.

No. 17-60744

**I.**

Cardoso de Flores, a Mexican citizen, was lawfully admitted to the United States as a permanent resident alien in 1998 after marrying a United States citizen. In 2000, authorities in Tennessee arrested Cardoso de Flores after finding her in a car carrying 54.6 pounds of marijuana. A Tennessee grand jury indicted Cardoso de Flores with possessing with the intent to sell more than 4,536 grams of marijuana in violation of Tenn. Code Ann. § 39-17-417. Cardoso de Flores later pleaded guilty to the lesser offense of possession of a controlled substance in violation of Tenn. Code Ann. § 39-17-418.

In 2010, the Department of Homeland Security issued Cardoso de Flores a notice to appear charging her with removability under 8 U.S.C. § 1227(a)(2)(B)(i)—part of the Immigration and Nationality Act ("INA")—because she had been convicted of a controlled-substance offense. Cardoso de Flores argued through counsel that her Tennessee conviction did not render her removable because her conviction was for "a single offense involving possession for one's own use of 30 grams or less of marijuana," which § 1227(a)(2)(B)(i) excepts as grounds for removal. Looking to Cardoso de Flores's arrest report, an immigration judge (the "IJ") determined that Cardoso de Flores's conviction involved possession of 54.6 pounds of marijuana.[1] The IJ therefore determined that § 1227(a)(2)(B)(i)'s personal-use exception did not apply. The IJ further found Cardoso de Flores was not entitled to cancellation of removal because she did not live in the United States continuously for seven years prior to her offense. Accordingly, the IJ ordered Cardoso de Flores removed from the United States.

---

[1] There are 453.592 grams in a pound. Therefore, Cardoso de Flores was caught with well over 30 grams of marijuana.

2

No. 17-60744

Cardoso de Flores appealed to the Board of Immigration Appeals ("BIA"). Following its precedent, the BIA applied a circumstance-specific inquiry to determine whether the personal-use exception applied to Cardoso de Flores's conviction. It determined as a threshold matter that the Tennessee statute supporting Cardoso de Flores's conviction was not limited to simple possession of 30 or fewer grams of marijuana. Then, looking to Cardoso de Flores's arrest report, criminal complaint, and plea colloquy, the BIA determined that Cardoso de Flores possessed 54.6 pounds of marijuana. Finding no contrary evidence, it concluded that the personal-use exception did not apply and affirmed the IJ's order. Cardoso de Flores now petitions this court for review.

## II.

Where, as here, the BIA issues its own opinion explaining its reasoning, we review the BIA's opinion instead of the IJ's order. *See Ghotra v. Whitaker*, 912 F.3d 284, 287 (5th Cir. 2019). "Although we generally review its legal conclusions *de novo*, 'the BIA is entitled to *Chevron* deference when it interprets a statutory provision of the INA and gives the statute "concrete meaning through a process of case-by-case adjudication,"' so long as the BIA's opinion is precedential." *Calvillo Garcia v. Sessions*, 870 F.3d 341, 343-44 (5th Cir. 2017) (footnotes omitted) (quoting *Ali v. Lynch*, 814 F.3d 306, 309-10 (5th Cir. 2016)); *see also Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843-44 (1984). Under *Chevron*, we afford agency interpretations of statutes "'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute' or Congress has 'unambiguously expressed' a contrary intent." *Calvillo Garcia*, 870 F.3d at 344 (quoting *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012)). We review the BIA's factual findings for substantial evidence. *Ghotra*, 912 F.3d at 287.

3

No. 17-60744

### III.

Section 1227 lists categories of aliens subject to removal, including:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

§ 1227(a)(2)(B)(i). Courts must apply the so-called categorical approach to determine whether an alien's conviction relates to a controlled substance. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1985-87 (2015). Under the categorical approach, courts "look[] to the statutory definition of the offense of conviction, not to the particulars of an alien's behavior." *Id.* at 1986.

The parties do not dispute that the categorical approach governs whether Cardoso de Flores's conviction relates to a controlled substance, nor do they dispute that under the categorical approach, Cardoso de Flores's conviction in fact does relate to a controlled substance. Rather, the dispute is over the exception in the final clause of § 1227(a)(2)(B)(i): "other than a single offense involving possession for one's own use of 30 grams or less of marijuana." The BIA applies a circumstance-specific approach to determine whether a conviction falls within this personal-use exception. *See Davey*, 26 I. & N. Dec. 37, 39 (B.I.A. 2012).

The BIA's approach to assessing removability under § 1227(a)(2)(B)(i) proceeds in three parts. First, it applies the categorical approach to determine whether an alien's conviction relates to a drug offense. *See, e.g.*, *Wanniarachchi*, 2018 WL 3045846, at *2 (B.I.A. Apr. 23, 2018) (unpublished). If so, it then asks whether "the fact of conviction is sufficient by itself to conclusively establish all facts relevant to prove the applicability of the" exception. *Dominguez-Rodriguez*, 26 I. & N. Dec. 408, 413 (B.I.A. 2014). If this

4

is the case, the "inquiry is at an end, and the removal charge must be dismissed without resort to a circumstance-specific inquiry." *Id.* But if the fact of the conviction is not enough to show the personal-use exception applies, then the BIA looks to the specific facts supporting the alien's conviction to ascertain whether the conviction involved personal possession of 30 grams or less of marijuana. *See Davey*, 26 I. & N. Dec. at 39. Therefore, for example, if an alien was convicted of violating a statute that criminalizes simple possession of 29 grams or less of marijuana, then the elements of the conviction would conclusively establish that the alien's offense fell within the personal-use exception and the BIA would have no reason to look at the facts supporting the conviction. But if, as the BIA concluded was the case here, the alien was convicted of violating a statute that criminalizes simple possession of marijuana without reference to quantity, then the BIA looks to the facts supporting the conviction to determine the quantity involved.

Cardoso de Flores maintains that this approach is incorrect. She says the categorical approach must apply to § 1227(a)(2)(B)(i) in its entirety. In other words, Cardoso de Flores argues that—regardless of the real-world facts supporting her conviction—if she could have been convicted under the same Tennessee statute for possessing 30 grams or less of marijuana for her personal use, then the personal-use exception applies to her conviction. She also argues that the personal-use exception should apply to her conviction even under the BIA's approach because her conviction necessarily involved the possession of 30 grams or less of marijuana for her personal use.

### A.

We have never directly addressed the BIA's position that the circumstance-specific approach applies to the personal-use exception in § 1227(a)(2)(B)(i). We have applied the BIA's circumstance-specific approach on one occasion. *See Esquivel v. Lynch*, 803 F.3d 699, 702 (5th Cir. 2015). But

we specifically noted that neither party challenged the BIA's approach and that our holding would have been the same under the categorical approach. *See id.* at 702 n.2. Now faced squarely with this question, we conclude that the BIA's position that the personal-use exception requires a circumstance-specific inquiry is a reasonable interpretation of the INA; we therefore defer to the BIA.[2]

The Supreme Court's analysis in *Nijhawan v. Holder*, 557 U.S. 29 (2009), all but compels this result. In *Nijhawan*, the Court considered a different section of the INA that defines the term "aggravated felony" for purposes of § 1227(a)(2)(A)(iii). *See* 557 U.S. at 32. Under that definition, an alien is removable for having committed an aggravated felony if the alien is convicted of, inter alia, "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The alien in *Nijhawan* had been convicted in federal court of violating five federal fraud statutes. 557 U.S. at 32. None of the statutes at issue required the Government to prove a specific loss, but the alien stipulated at sentencing that he defrauded his victims of more than $100 million. *Id.* Thus, if § 1101(a)(43)(M)(i)'s $10,000 threshold referred to an element that must be proved in every instance to sustain a conviction, then the alien's fraud convictions would not have been aggravated-felony convictions. But if the $10,000 threshold referred to facts underlying the convictions, then the fraud convictions would have been aggravated-felony convictions.

---

[2] Although the BIA's decision below was from a single board member and is thus not precedential, *see Dhuka v. Holder*, 716 F.3d 149, 155 (5th Cir. 2013), that decision followed prior published three-member decisions in which the BIA held the circumstance-specific approach applies to the personal-use exception. *See Oanh Nguyen v. Holder*, 542 F. App'x 384, 389 (5th Cir. 2013) (unpublished) (per curiam) ("[P]rior precedential BIA decisions cited by [a] single-member decision will be afforded *Chevron* deference as appropriate.").

The Court determined that the $10,000 threshold referred to the specific facts of the crime. *See id.* at 40. The Court began its analysis by observing:

> [I]n ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to a generic crime, say, the crime of fraud or theft in general, and sometimes refer to the specific acts in which an offender engaged on a specific occasion, say, *the* fraud that the defendant planned and executed last month.

*Id.* at 33-34. The Court then recognized that it had previously interpreted the term "violent felony" in the Armed Career Criminal Act (the "ACCA") to refer to generic crimes. *See id.* at 34-35. But it explained that the language in the ACCA's definition of "violent felony" refers to generic crimes and elements of crimes. *See id.* at 36. By contrast, the Court noted, § 1101(a)(43)'s definition of "aggravated felony" uses some "language that almost certainly does not refer to generic crimes but refers to specific circumstances." *Id.* at 37.

To illustrate, the Court gave the example of § 1101(a)(43)(P), which defines aggravated felony to include "falsely making, forging, counterfeiting, mutilating, or altering a passport . . . except in the case of a first offense for which the alien . . . committed the offense for the purpose of assisting . . . the alien's spouse, child, or parent." *See id.* (second and third omissions in original) (emphasis omitted) (quoting § 1101(a)(43)(P)). The Court explained that "'forging . . . passport[s]' may well refer to a generic crime," but it said the "exception cannot possibly refer to a generic crime[] . . . because there is no such generic crime." *Id.* (first alteration and first omission in original) (quoting § 1101(a)(43)(P)). The Court thus surmised that "if the provision is to have any meaning at all, the exception must refer to the particular circumstances in which an offender committed the crime on a particular occasion." *Id.* at 37-38. Therefore, the Court concluded that some parts of the "aggravated felony" definition refer to generic crimes and thus require the categorical approach

while other parts refer to the facts of the particular case and require the circumstance-specific approach. *See id.* at 38.

Turning to § 1101(a)(43)(M)(i) specifically, the Court determined that it called for the circumstance-specific approach. The Court first noted that the text of that subparagraph—specifically the use of "in which"—appeared to refer to "the commission of the offense of conviction." *Id.* at 38-39. It then observed that applying the categorical approach "would leave [§ 1101(a)(43)(M)(i)] with little, if any, meaningful application." *Id.* at 39. The Court elaborated that it "found no widely applicable federal fraud statute that contains a relevant monetary loss threshold." *Id.* Further, the Court surveyed state law and concluded that at the time Congress added the $10,000 threshold to § 1101(a)(43)(M)(i), only eight states had fraud statues "in respect to which [§ 1101(a)(43)(M)(i)]'s $10,000 threshold, as categorically interpreted, would have full effect." *Id.* at 40.

Applying the same analysis to § 1127(a)(2)(B)(i)'s personal-use exception, we conclude that the BIA reasonably interpreted the personal-use exception to require a circumstance-specific approach. First, the language "a single offense involving" suggests a circumstance-specific inquiry. Although, as the Court recognized, "offense" *could* refer to either a generic crime or specific conduct, *see id.* at 33-34, the use of "involving" makes the latter interpretation more plausible. In this regard, "involving" functions similarly to the use of "in which" in § 1101(a)(43)(M)(i) that swayed the Court toward the circumstance-specific approach.

But perhaps more tellingly, applying the categorical approach to the personal-use exception would leave § 1227(a)(2)(B)(i) "with little, if any, meaningful application." *Id.* at 39. Congress first added the personal-use exception to § 1227(a)(2)(B)(i)'s predecessor in 1990. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 602, 104 Stat. 4978, 5080. At that time, the federal

simple-possession statute did not distinguish between possession of marijuana as opposed to any other controlled substance, nor did it distinguish between possession of greater or less than 30 grams. *See* 21 U.S.C. § 844(a) (1988). Likewise, a majority of states and the District of Columbia followed the Uniform Controlled Substances Act ("UCSA") at the time. The 1990 version of the UCSA's simple-possession provision is at least somewhat congruent to the personal-use exception in that it carves out a lower offense for simple possession of fewer than 29 grams of marijuana. Unif. Controlled Substances Act § 406(d) (Unif. Law Comm'n 1990). But the difference in the quantity cutoff—as small as it is—means that no simple-possession conviction under the UCSA would ever render an alien removable under the categorical approach: possession of 29 or more grams of marijuana under the UCSA is a categorically broader offense than possession of more than 30 grams of marijuana. If Congress had intended for § 1227(a)(2)(B)(i) to track state law such that the categorical approach would apply, one would expect Congress to set the upper limit for the personal-use exception at 29 rather than 30 grams. Accordingly, Congress must have intended the circumstance-specific approach to apply.

Cardoso de Flores relies solely on *Moncrieffe v. Holder*, 569 U.S. 184 (2013), to argue otherwise. *Moncrieffe* is inapposite. The issue in *Moncrieffe* was whether a Georgia possession-with-intent-to-distribute statute categorically fit the federal generic definition of illicit trafficking in a controlled substance. *See* 569 U.S. at 192. The Court held that the Georgia statute did not meet the generic definition because it prohibited distributing small amounts of marijuana without remuneration, which federal law explicitly excluded from its drug-trafficking prohibition. *See id.* at 194-95. Thus, the Court held that the Georgia statute was categorically broader than the generic offense. *See id.* The Government nevertheless argued that the Court should

adopt an approach similar to the one it endorsed in *Nijhawan* in which it would look to the specific circumstances to determine whether the no-remuneration exception applied. *See id.* at 200. The Court rejected the invitation; in distinguishing *Nijhawan*, it noted that the exception in that case came from the INA itself whereas the no-remuneration exception was part of the generic offense. *See id.* at 202. In this case, as in *Nijhawan*, that the personal-use exception is located "in the INA proper suggests an intent to have the relevant facts found in immigration proceedings." *Id.*

We therefore conclude that the BIA's interpretation of § 1227(a)(2)(B)(i)'s personal-use exception is reasonable, so we defer to it.

## B.

Applying the BIA's circumstance-specific approach, we conclude that Cardoso de Flores's conviction does not fall within the personal-use exception. Cardoso de Flores argues that her conviction for possession of a controlled substance under Tenn. Code. Ann. § 39-17-418 necessarily involved possession of no more than 14.175 grams of marijuana for personal use. Ergo, she insists, the BIA should have concluded that the personal-use exception applied without looking to records from her arrest and prosecution.

Cardoso de Flores misreads § 39-17-418. Section 39-17-418 states, in relevant part:

> (a) It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice.
> (b) It is an offense for a person to distribute a small amount of marijuana not in excess of one-half ( ½ ) ounce (14.175 grams).

The text and structure of § 39-17-418 show that subsection (a) criminalizes simple possession and casual exchange of a controlled substance,

regardless of the specific type or quantity of that substance, while subsection (b) criminalizes low-quantity marijuana distribution. This is especially apparent when read in conjunction with § 39-17-417, which criminalizes more serious controlled-substance offenses. Section 39-17-417(g)(1) makes it a felony to distribute more than 14.175 grams of marijuana, thus addressing a more serious distribution offense than § 39-17-418(b). But no part of § 39-17-417(g)(1) addresses a simple-possession offense more serious than § 39-17-418(a), suggesting that all simple possession offenses, regardless of quantity, fall under § 39-17-418(a).[3]

Thus, to the extent Cardoso de Flores was convicted under subsection (a), her conviction could have involved possession of a substance other than marijuana or possession of greater than 30 grams of marijuana, either of which would place the conviction beyond the personal-use exception's reach. To the extent she was convicted under subsection (b), her conviction would have involved distribution, which would likewise place her conviction beyond the personal-use exception's reach. Therefore, the BIA appropriately looked to the facts surrounding Cardoso de Flores's arrest and conviction. Looking to those facts, we conclude that substantial evidence supports the BIA's findings that Cardoso de Flores possessed 54.6 pounds of marijuana—substantially more than the personal-use exception's 30-gram threshold. Cardoso de Flores does not argue otherwise.

---

[3] We also reject Cardoso de Flores's suggestion that the rule of lenity should inform our interpretation of § 39-17-418. Even assuming the rule of lenity could otherwise apply in this situation, we perceive no ambiguity in this statute, especially not one severe enough to warrant resort to the rule of lenity. *See United States v. Suchowolski*, 838 F.3d 530, 534 (5th Cir. 2016) ("[T]he rule of lenity only applies if, after considering the text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the [c]ourt must simply guess as to what Congress intended". (alterations in original) (quoting *United States v. Castleman*, 572 U.S. 157, 172-73 (2014))).

No. 17-60744

## IV.

For the reasons stated above, we DENY Cardoso de Flores's petition for review.